UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

---

| | |
|---|---|
| **DEMARCUS D FRIELS** | **CASE NO. 22-cv-1098** |
| -vs- | **JUDGE DRELL** |
| **WARREN INC., ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

---

RULING

Before the court are two motions for summary judgment seeking dismissal of all claims asserted against the defendants Warren, Inc., Warren Equipment, Inc., Warren Truck Equipment, Inc., Warren Truck and Trailer, Inc., Warren Truck and Trailer, LLC, and Warren Equipment, Inc. of Florida ("Warren") (Doc. 52), and Daimler Truck North America L.L.C. ("Daimler") (Doc. 53). For the reasons set forth herein, both motions will be GRANTED.

I.  Background

On May 13, 2021, DeMarcus Friels, an experienced commercial truck driver,[1] was operating a dump truck in the course and scope of his employment with Louisiana Department of Transportation and Development ("DOTD"). The dump truck was a combination of a 2015 Freightliner Chassis manufactured by Daimler that was retrofitted with a dump truck bed and hydraulic lift system manufactured by Warren.

Friels was transporting road construction debris from a work site in Pineville, Louisiana to the DOTD dump yard at Willow Glen in Alexandria, Louisiana. On his third run of the day, Friels arrived at Willow Glen and performed the following tasks as he had done many times before: he

---

[1] Friels had driven commercial trucks for more than 20 years and had driven dump trucks for the better part of ten years.

backed the truck up to the dump area, engaged the power take-off ("PTO")[2] to lift the dump bed, disengaged the pins to the dump bed, raised the dump bed, emptied the load, lowered the bed, disengaged the PTO, locked the gate, and pulled out of the yard to return to the work site in Pineville. However, Friels did not actually lower the dump bed, so when he exited the Willow Glen yard onto Louisiana Highway 71, the dump bed was extended in the upright position. Within thirty seconds of leaving the Willow Glen yard, Friels had reached a speed of roughly 45 miles per hour. He successfully passed under one overpass of Interstate 49, but hit a lower overpass. As a result of the collision with the overpass, the dump bed was dislodged from the chassis, and the truck veered off of the roadway and struck a concrete bridge pillar.

As a result of this horrific accident, Friels became a paraplegic.

Friels filed the instant lawsuit pursuant to the Louisiana Product Liability Act ("LPLA") alleging that Warren and Daimler were manufacturers of the dump truck and that they breached their duties to manufacture a product that was neither unreasonably dangerous nor defectively designed and provided an adequate warning. Warren and Daimler filed separate motions for summary judgment, both of which argue that driving on a highway with the dump bed extended in the upright position was not a reasonably anticipated use of the dump truck.

II.   Law and Analysis

   A.   Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if evidence is such that a reasonable jury could

---

[2] A PTO is the link between the truck's transmission and the hydraulic pump that lifts the dump bed.

return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is twofold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Id.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Liberty Lobby, 477 U.S. at 250. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Id. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to her, is sufficient to enable a reasonable jury to render a verdict in her favor. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986)). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations in the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

When ruling on a motion for summary judgment, it is improper for a court to make a credibility determination or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). A court must also view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. Clift v. Clift, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine dispute of material fact exists when the

evidence would allow for a reasonable trier of fact to return a verdict for the nonmovant. <u>Renfroe v. Parker</u>, 974 F.3d 594, 599 (5th Cir. 2020) (citing <u>Austin v. Kroger Tex., L.P.</u>, 864 F.3d 326, 328 (5th Cir. 2017)).

B. Discussion

The LPLA "establishes the exclusive theories of liability [in Louisiana] for manufacturers for damage caused by their products." La. R.S. § 2800.52. The act imposes liability on product manufacturers for damages "proximately caused by a characteristic of the product that renders it unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant." La. R.S. 9:2800.54. A plaintiff asserting a products liability action against a manufacturer must satisfy a two-tiered burden by showing: (1) his damages arise from a reasonably anticipated use of the product, and (2) his damages were caused by a characteristic of the product that renders it unreasonably dangerous." <u>Kampen v. American Isuzu Motors, Inc.</u>, 157 F.3d 306, 309 (5th Cir. 1998). "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous' question need not be reached." <u>Id.</u> As the issue of reasonably anticipated use is a threshold matter for any claim brought under the LPLA and is one brought to the forefront by the defendants, the court will address that issue first.

The parties disagree about whether the manner in which Friels used the dump truck was a "reasonably anticipate use" as contemplated by the LPLA. The LPLA defines a "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. 9:2800.53 Thus, the standard for determining a reasonably anticipated use is an objective one.

> When determining whether a use was reasonably anticipated, courts have previously considered factors such as: (1) whether the injured party used the product in a manner that was obviously dangerous; (2) what the user was instructed

4

> to do and warned not to do with respect to the use of the product; (3) whether the use of the product was expressly warned against in the product's labeling (or operations manual) and the language of that warning; and (4) the sophistication/experience of the user-purchaser.

Broussard v. Procter & Gamble Co., 463 F.Supp.2d 596, 606 (W.D. La. 2006).

Defendants argue that because Friels' use of the dump truck with the bed elevated was obviously dangerous, against all warnings and trainings he received, and because he was an experienced user who knew of the potential for danger, the use could not be reasonably anticipated. Defendants point to Friels own deposition testimony in which he admitted that he knew he was not to drive the dump truck with the bed extended in the upright position. He also testified that despite the warning and his knowledge that he should check to ensure the dump bed was in the fully lowered position, he did not do so. He did not exit the truck at any time to do a visual inspection. He did not look at the PTO to determine if it was engaged and the warning light was flashing. He did not look through the back window of the cab to confirm that the bed was fully lowered, and he did not check his side view mirrors to determine whether the dump bed was fully retracted. Instead, he exited the Willow Glen yard, checked for oncoming traffic, and began his return trip to Pineville.

Friels argues in opposition that his use was reasonably anticipated because defendants could foresee this kind of misuse or negligence occurring. We note that "'[r]easonably anticipated use' is more restrictive than the broader, [pre-LPLA] standard of 'normal use,'" and it does not suggest manufacturer liability "for every conceivable foreseeable use of a product." Delphen v. Dept. of Transp. & Dev., 657 So.2d 328, 333-34; see also Lockart, 989 F.2d at 868. "The LPLA's 'reasonably anticipated use' standard should be contrasted with the pre-LPLA 'normal use' standard; 'normal use' included 'all intended uses, as well as all reasonably foreseeable uses and

5

misuses of the product." Kampen, 157 F.3d at 309 (citing Hale Farms, Inc. v. American Cyanamid Co., 580 So.2d 684, 688 (La.App. 2 Cir.1991)). Thus, while "normal use" included misuse that was contrary to the manufacturer's instructions, "reasonably anticipated use" is an objective standard which does not include uses clearly contrary to warnings. See Bloxom v. Bloxom, 512 So.2d 839 (La.1987) and Butz v. Lynch, 99 1070 (La.App. 1 Cir. 6/23/00), 762 So.2d 1214.

"Where a manufacturer provides an express warning cautioning against a use of the product for which the product was neither designed nor intended, and where the plaintiff acts in direct contravention of that warning…the plaintiff's 'use' of the product will not be a reasonably anticipated one, unless, … 'the plaintiff has presented evidence that despite the warnings, [the manufacturer] should have been aware that operators were using the [product] in contravention of certain warning." Kampen, 157 F.3d at 314 (quoting Lockart, 989 F.2d at 868). Moreover, "'[e]ven if the warning did not reach the users,' if the danger from a particular use of a product is obvious, then it is not a "reasonably anticipated use" under the LPLA." Spears v. Cintas Sales Corp., 414 Fed.Appx 667, 669 (5th Cir. 2011) (citing Lockart, 989 F.3d at 868).

Thus, the question comes down to whether the defendants knew or should have known that the product was being used in contravention of the warnings. Friels contends that the defendants knew or should have known that users were driving dump trucks with the dump bed extended in the elevated position. In support he presents a spreadsheet of Google search results of dump truck accidents where the dump bed extended in the upright position. (Doc. 56-8). The spreadsheet is plaintiff's compilation of various dump truck accidents occurring in various states and Canada, at least one of which dates back to 1983. Some entries have links to internet stories or videos, but many are simply the plaintiff's own summary of the accident.

This spreadsheet is also referenced by plaintiff's expert witness who also provided several pictures of dump truck accidents, but the purported evidence is insufficient to create a genuine issue with respect to whether the defendants knew or should have known that dump trucks were being used in this manner. The only specific information provided on the spreadsheet is the location of each accident and the date on which it occurred. Otherwise, this spreadsheet is devoid of pertinent information. We don't know anything about the type of dump trucks being driven. We don't know who was driving the dump trucks. We don't know whether the beds were intentionally elevated, whether the dump beds were the same size as the one at issue here, whether there was a warning system, whether the warning system was visual, audible or both, how fast the trucks were being driven, whether the drivers had CDLs, nor how long had the drivers held CDLs. We also note that some of the accidents predate the year the dump truck at issue was manufactured, so certainly there is little to no similarity between those trucks and the one driven by Friels. Further, simply because a Google search resulted in reports of accidents involving dump trucks hitting overhead bridges, does not mean that those accidents should have or did place these defendants on notice that their product was being used in contravention of express warnings. Moreover and most importantly, no evidence has been presented that any of the dump trucks in the list were dump trucks of the type and variety of the one here. Put succinctly, there is no apples-to-apples comparison that can be made on these facts.

Friels attempts to persuade the court to use this spreadsheet as "readily available public information" capable of placing the defendants on notice. In support, he cites <u>Harvey v. Toyota Material Handling, USA, Inc.</u>, 2007 WL 1115235 (W.D.LA. Apr. 13, 2007), but that case does not support his contention that a spreadsheet of Google searches should be considered "readily available public information." In <u>Harvey</u>, the court found that 25 OSHA Accident Search Detail

7

reports and the defendant's own admissions in other cases that it was aware of similar accidents was enough to convince the court that summary judgment should not be granted as to reasonably anticipated use. In this case, there is no evidence that a governmental safety agency compiled data and that such data was publicly available to an industry. Nor is there any evidence that either of the defendants had prior knowledge that dump trucks were being driving with the beds in the upright position, in contravention of their warnings.

We are also not persuaded by Friels argument that the passage of laws in Quebec and/or Massachusetts that certain audible and/or visual warnings be installed in dump trucks had any bearing on what the defendants knew or should have known regarding the misuse of their products. At most, the passage of these laws placed the defendants on notice that such laws existed, but there is no evidence presented by Friels that the defendants knew or should have known of the laws' existence. Even if they did, it does not prove that the purported reason for the enactment of the laws (driving the dump truck in contravention of warnings) was known or should have been known by the defendants.

As Friels has failed to establish that the defendants knew or should have known that users were in general driving dump trucks in contravention of express warnings and Friels has not shown that any dump trucks in other accidents were of the type and variety of the one in this case, we do not find that Friel's use of the dump truck in this case was a reasonably anticipated use. Without a reasonably anticipated use, Friels cannot maintain and action under the LPLA and this case should be dismissed against all defendants.

III.  Conclusion

In light of the foregoing, the defendants' motions summary judgment shall be GRANTED. A judgment in conformity with this ruling shall be issued this date.

THUS DONE AND SIGNED at Alexandria, Louisiana this 25th day of September 2024.

```
                                    _____
                                    DEE D. DRELL, SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT
```